JUDGE STITES
delivered the opinion oe the court:
Hawkins sold four slaves to Thompson for the sum of eleven hundred and eighty-five dollars, and executed to him a bill of sale with the usual covenants of soundness, &c. Thompson paid one thousand dollars down, and gave his due bill for the balance. This due bill Hawkins afterwards assigned to Wilson without recourse; and, the maker being insolvent, this action was brought by Hawkins and Wilson, as co-plaintiffs, against Thompson and Ball.
The petition, after setting forth the sale, execution of the *125 note, and assignment, proceeds to charge that Thompson was insolvent when the sale occurred, and was still so, and that Hawkins was ignorant thereof when he took his note; that, in buying the slaves, he was, in truth, the agent of his co-defendant, Ball, paid his money for them, and delivered them to him in Maysville; that the slaves had been since held by Ball, for whom they were bought, and the balance of the purchase money, for which the note was given, was then due and owing from Ball to the plaintiff, Wilson.
The plaintiffs further charged that Thompson fraudulently concealed from Hawkins the fact of his agency for Ball, and the fact that he, Thompson, was insolvent, and, by reason of such fraudulent concealment, was also liable for the balance due for the slaves, and prayed for judgment in behalf of Wilson against both Thompson and Ball.
Ball denied that Thompson was his agent in the transaction, or that he, Ball, had anything to do with the purchase of the slaves, directly or indirectly, or that he was bound for the debt, or in anywise liable to the plaintiffs.
Thompson admitted the purchase of the slaves, and the execution of the bill of sale and note; but denied that he was acting for Ball, or any other person than himself, in the transaction, and set up a counter claim against Hawkins for an alleged breach of the covenant as to the soundness of one of the slaves. To this counter claim Hawkins replied, by alleging fraud in the obtention of the bill of sale as executed, and also that the defect complained of was patent and visible, and well known to the vendee when he bought.
Upon these issues the parties went to trial, and the jury found for Wilson against Thompson on the note; for Hawkins and against Thompson on the counter claim, and against Wilson and Hawkins as to Ball.
Wilson and Hawkins moved for a new trial against Ball, and Thompson made a like motion as to Hawkins; and both having been denied, Wilson and Hawkins have appealed.
The ground relied on for reversal is alleged error in allowing and refusing instructions. And as Thompson is not complaining in this court, it will only be necessary to notice such *126 of the instructions as relate to the liability of Ball, and the testimony tending to implicate him in the transaction.
The evidence, outside of the bill of sale and note, conduced to show, substantially, that Thompson was insolvent — hopelessly so — when the slaves were bought, and had so continued up to the time of trial. That he had been engaged during that summer in buying slaves for Ball, who furnished him money for that purpose. That they were regarded either as partners, or Ball as principal and Thompson as agent. That the negroes in question were taken directly after the sale to Ball’s house, where they were kept; and that Thompson was in the habit of taking slaves that he bought to the house of Ball, who kept a tavern; and, also, that Ball was mentioned as a partner by Thompson when he bought the slaves, and in connection with his assurance of prompt payment of the due bill for the balance.
Upon these facts appellants moved the court to instruct the jury, as to Ball, in substance:
1. That if they found that Thompson was the agent of Ball in the purchase of the slaves, and in fact made the purchase for him, that he, Ball, was liable for the balance of the purchase money; and,
2. That if they found that Ball and Thompson were partners in the transaction, that then both were liable.
These instructions were refused; and the court, on motion of appellees, instructed the jury:
1. That they should find for Ball, if' they believed from the evidence that Hawkins had assigned the note of Thompson to Wilson without recourse.
2. That they could not find for Hawkins against either of the defendants, if he had assigned the note of Thompson to Wilson, and had not taken it back, and become the holder thereof; and,
3. That they could not find for Wilson against Ball.
The instructions of appellees assume that the assignment of the note by Hawkins, divested him of any right against Thompson; that Wilson took nothing by the assignment but the note; and further, that if Hawkins ever had a cause of *127 action against Ball, growing out of the original contract, it still remained in him, and did not pass to Wilson — a view of the case, to our minds, evidently erroneous.
The petition contains a cause of action, growing out of contract, against Ball, and another, for his alleged fraud, against Thompson — an evident misjoinder under the Civil Code, {sec, 111,) but resulting in no harm to appellants, because no objection was taken before defense, {lb., section 113.)
Hawkins certainly had a right of action against Thompson for his fraud, aside from the note; and as certainly had the right to look to Ball for the balance due for the slaves — provided the latter was in point of fact either the principal or partner of Thompson in the purchase. Of the former he was not divested by the assignment. Such claim could not pass by assignment. Whether he was divested of the latter, depended altogether upon the effect to be given to the assignment.
That it was Hawkins’ intent to invest Wilson, not only with the note, but any claim he had on Ball for the purchase money, we think obvious. The balance due for the slaves was the thing intended to be transferred. Hawkins was not willing to be liable as assignor on Thompson’s note; but intended that Wilson, who took the note without recourse, should have whatever remedy he (Hawkins) had, growing out of the contract, whether against Ball or Thompson, or both. Otherwise, why unite with him in the action ? Why permit the use of his name against Ball?
But suppose that such was not the intent of the parties or the effect of the assignment, does it result that Hawkins had no right to recover ? Certainly not. It is true that, in this view, the joinder of Hawkins and Wilson was improper, and might have furnished a ground for a motion to cause one of their names to be stricken out; but the failure to make such motion at the proper time operated as a waiver of the misjoinder of parties, and the misjoinder could not affect the substantial rights of the appellants, or either of them. All the parties were before the court without objection either to the misjoinder of actions or of parties, and, by the Civil Code, {sec. 161,) it was the duty of the court to disregard any error *128 or defect in the proceedings not prejudicial to their substantial rights.
If Ball was in fact the principal of Thompson, or his partner, in the purchase of the slaves, and they were in reality bought by the latter for Ball as principal, or for Ball and himself as partners, Hawkins certainly had the right to look to Ball for the balance of the purchase money; and as the assignment in this case had the effect of transferring Hawkins’ rights growing out of the contract, with regard to such balance, to Wilson, we can perceive no valid reason why the instructions asked for by the appellants were denied.
It seems to us, therefore, that the court below erred in refusing the first and second instructions asked for by appellants, and in granting the first, second, and third, asked for by appel-lees.-
The judgment is reversed, and cause remanded for a new trial without costs, and further proceedings not inconsistent with this opinion.