## ANNAN v. BAKER & a.

Where land was sold, for the non payment of the public taxes by the collector, on the fourth day of May, A. D. 1865, and the collector gave his deed of the same to the purchaser, on the 4th day of May, A. D. 1866, *held* that one year for the redemption of the land sold had not expired, and that the deed was given prematurely.

The court of chancery can only give relief, where it becomes necessary to amend or reform a description of and embraced in a deed.

Where two definite connecting lines are given, running at right angles, or nearly so, and also the quantity of land to be conveyed, such land can be located with due certainty, by running equi-distant lines from the point of their intersection, so far, as to embrace the required, or given quantity of land.

A mere *sale* of land, by a collector, without a deed, gives the purchaser no color of title.

This case is trespass by John G. Annan against Daniel S. Baker & a.; for breaking and entering plaintiff's close in Holderness, and cutting grass and carrying away hay, and converting same to defendants use, on the 13th day of July 1866.

Plaintiff claimed title to the land in question, by virtue of a sale of the same to him by one Hodge as collector of taxes for the town of Holderness, for the year 1864, for the taxes assessed that year in said town against Daniel S. Baker one of said defendants. The amount of tax assessed against said Daniel S. Baker for the year 1864 was, as follows : state, county, town and school tax, $41.18, school house tax, ninety-five cents.

This tax was assessed upon a farm, a horse, five cattle and eight sheep ; and a part of the same had been paid, *to wit* enough to cover all the assessment upon said Baker's poll, and upon all the stock, and leaving due only the assessment upon the farm. This balance, to pay which the land in question was sold, was as follows : " state, county, town and school tax, $30.98, school house, sixty-nine cents.

At the annual town meeting in March, 1864, Annan, Smith, and Hodge were duly chosen and qualified as selectmen of Holderness for the ensuing year, who assessed the taxes in due season. At said town meeting, the town duly voted to raise the sum of $5000, as money tax, to defray town charges the current year. *Also*, "Voted, to raise thirty per cent in addition to what we now raise by law, in support of schools the ensuing year." Under the last vote the selectmen ascertained the amount which the law required them to raise for schools, added thirty per cent. thereon, to that amount, and assessed their school tax, to cover that total sum.

The collector's appointment was made in writing to said Hodge, one of the selectmen and was signed by the other two selectmen. The appointment was dated April 13th, 1864. And the said Hodge's bond as collector was not approved, filed or recorded and he did not take the oath of office till April 30, 1864. But it appeared that said

Annan made out this appointment for Hodge and dated it on the 13th and that he signed it on that day, but that it was not signed by Smith and delivered to Hodge by Annan till April 30, when said Hodge accepted the office, took the oath and filed his bond. The collector's warrant and list of taxes were both signed by all three of the selectmen, and dated April 30. 1864, in which the taxes against said Baker were duly committed to said Hodge for collection. No objection was made to the state tax. To authorize the raising of a county tax by the town of Holderness for that year (1864) plaintiff introduced the warrant of the county treasurer to the town of Holderness, ordering said town to raise the sum of $722.31 as county tax. Plaintiff also introduced a copy of the procedings of the county convention held in June 1863, of which the following is a copy.

Haverhill, Dec. 1, 1863.   " Report of the Grafton county delegation of Representatives, June session 1863.  Agreeable to call Grafton county delegation met in south gallery of representatives hall immediately after adjournment of morning session June 12. Proceeded to choice of officers—chose J. Buffum, of Monroe, President, A. Jenkins, Piermont, Secretary.  Voted to adjourn to call of the chair.  At call met June 16th P. M.  On motion of Parker of Lyman, voted a committee of three be appointed by the chair, to bring before the delegation, any business they may deem proper. Appointed committee Hoyt, of Holderness, Eastman of Littleton, Shaw of Lebanon.  Voted to adjourn to call.  At call met June 18, A. M.  In absence of clerk, chose Eastman of Littleton, clerk *pro tem,*  Voted to adjourn to call.  At call met July 1, P. M.  On call, heard report of committee.  *I herewith submit report of Committee.*  State of New Hampshire.  Convention of Grafton county. The committee to whom was referred the amount of money to be raised for the county of Grafton have considered the same and ask leave to report.  Your committee recommend twenty thousand dollars to be raised.  George Hoyt, for the committee.  Voted to accept report of Committee.  Voted to adjourn " *sine die.*"

ALONZO JENKINS, *Secretary.*

The state of New Hampshire.  Grafton, ss.   Supreme Judicial Court, clerk's office, January 20, A. D. 1864.   Received for record. Recorded and examined,          Attest,      C. A. DOLE, *Clerk.*"

Plaintiff offered evidence as bearing upon the legality of the assment of the school house tax, the following.  A book of records purporting to be the records of school district No. 14 in Holderness, in which was what purported to be the records of school meetings in said district for the years (among others) of 1863-4 & 5, with the testimony of witnesses, who stated that they had acted as clerk of said district in 1863–1864 & 1865, that said district embraced a part of Holderness village, and that this district had acted as a school district for fifteen years, and that Daniel S. Baker lived in this district and that the book of records produced were the records of said district.  From said records it appeared that the copies of the war-

rants for the school meetings in March, 1863, and in 1864 were post-
ed *at* the door of the school house in said district, but it appeared in
evidence that said warrants were in fact posted *on* the door of said
school house.   The warrant for the meeting in March 1864, was dat-
ed March 22d, was posted up same day and called a meeting of said
district to meet at said school house, on the 31st day of the same
March, at which meeting said district voted, to raise the sum of
thirty-five dollars to purchase mural maps, globes and apparatus for
said district.   It appeared that this vote was duly certified by the
clerk of the district to the selectment, and that the selectmen made
their assessment of the tax designated as " *School House Tax,*" by
virtue of that vote, so certified to them.   It did not appear from the
records of said district that the warrant thus posted up March 22,
1864, for the school meeting, was under seal, but there was evidence
tending to show that the original warrant was under seal, and the
plaintiff had leave on motion, to amend the record, by showing that
such amendment would be according to the fact.   Plaintiff also mov-
ed for leave to amend the record of the county convention, in various
particulars, and leave was granted to amend said record in any par-
ticulars, upon showing the court, that such amendments would be
according to the facts in the case.

It appeared, that said Hodge, as collector, gave to said Baker a
notice in writing of the amount of his taxes in May or June, 1864,
after that, he called on said Baker, several times, for the taxes.
Baker, finally, declined to pay them.   There was evidence tending
to show that said Baker had personal property, sufficient to pay the
taxes, but that he did not expose the same, or offer to do so, to the
collector so that he might levy and collect his taxes thereon.   Hodge
testified, that he met said Baker on the day before he advertised the
land for sale, and told him that " unless he exposed the goods I
should sell the land, but he did not expose any, but said he would
not pay the tax."   There was no evidence that Hodge, in any other
terms, notified Baker, or, demanded of him, to expose goods or
chattels, out of which to collect the tax, and the court ruled that
when payment of the tax was demanded, of the person against whom
the tax had been assessed, and he neither paid it nor exposed goods and
chattels for him to take, that he might then properly proceed and
take the land.   Hodge advertised the land for sale ; the following is
a copy of the notice of sale :

## " COLLECTOR'S SALE OF REAL ESTATE.

All persons interested in the following tracts of land, in the town
of Holderness, in the county of Grafton, are notified that the same
are taxed in the tax-list committed to the subscriber, who, is col-
lector of taxes for said town for the year 1864, as follows :   A cer-
tain tract of land owned by Samuel S., and George and Samuel H.
Baker, known as the Samuel S. Baker *homestead* farm and now *oc-
cupied* by Samuel S., and David S. Baker, and taxed to the said

Daniel S. Baker, for state, county, town and school taxes, thirty dollars and ninety-eight cents, and for school house tax, sixty-nine cents.

Also,——.

And if no person shall appear to discharge said taxes on or before the fourth day of May next, at one o'clock, in the afternoon, I shall *proceed* to sell, at the Post Office in said town, at public auction so much of said real estate *owned* by such delinquents, respectively, as will be sufficient to discharge said taxes and all incidental charges against such persons.                    JOEL HODGE, *Collector.*

Holderness, N. H., March 20, 1865."

In the notices of the sale, that were posted up the word "then" was written next before the words "*proceed to sell.*"    And said notices, as posted up, may be referred to as part of this case.    Leave to amend the record by inserting the word "then" before the word "*proceed*" was granted on motion of plaintiff.    The land was sold on the 4th day of May, 1865.    And said Hodge, as collector, gave a deed of the same to the purchaser, this plaintiff on the 4th day of May, 1866.    The record of the return of the sale and the collector's deed, and the writ in this case, may be referred to as parts of the case.    Plaintiff moved for leave to amend the return of the sale and the record thereof, and also for leave to amend the collector's deed (the same not having been recorded) and the grantee consenting.

It appeared, by evidence addressed to the court, that the land sold, was, in fact, seven and three-fourths acres by measure in the northwesterly corner of the Samuel S. Baker farm, so-called, beginning at the brook and on the southerly side of the brook, thence going northerly (on the highway) to the Carr farm, thence extending easterly, of equal width all the way, far enough to make the required quantity.    And leave was granted to the plaintiff to have the account of the sale and the record thereof, amended and also the collector's deed, if under the circumstances that may properly be amended, so as to correspond in the description of the land, with the land actually sold as described above.

The return of the sale of the land, was as follows :    "The following is a true account of the sale of the real estate of persons resident in the town of Holderness, for taxes assessed upon the same in said town for the year 1864, and which were sold pursuant to notice, at public auction at the Post Office in said town, on the fourth day of May, 1865.    Seven and three-fourths acres of the Samuel S. Baker homestead farm, so-called, bounded thus : On the west, by the highway leading from Holderness village to Andrew Baker's farm ; northerly, by land now owned by John B. Carr ; easterly, and southerly, by the remaining part of said Baker farm—and was sold to John G. Annan, he being the highest bidder, for thirty-six dollars and fifty-seven cents, to pay the taxes remaining unpaid, assessed on said Baker place, amounting to thirty-one dollars and sixty-seven cents, and incidental charges amounting to four dollars and ninety cents, being in the whole, thirty-six dollars and fifty-seven cents.

                    JOEL HODGE, *Collector.*

Grafton, ss. May 4th, 1865. Then the said Joel Hodge appeared and made oath that the foregoing account by him signed is true, before me,                    JOHN G. ANNAN, *Justice of Peace.*"

The description of the land in the collector's deed, was as follows :

"Seven and three-fourths acres of the Samuel S. Baker homestead farm, so-called, bounded thus : On the west, by the highway leading from Holderness village to Andrew Baker's farm; northerly, by land now owned by John B. Carr; easterly and southerly, by the remaining part of said Baker's farm." ·

Verdict for plaintiff, which the defendant moves to set aside.

The following objections to the plaintiff's testimony were seasonably made by the defendant and all *pro forma*, overruled by the court, to which the defendant excepted, as he also did, to the ruling of the court, as stated in the case. And the questions of law are reserved.

### DEFENDANT'S EXCEPTIONS IN ANNAN *v.* BAKERS.

The collector did not file his bonds within six days after his appointment. Two of a board of selectmen cannot appoint the third collector. The vote to raise school money above that required by law is indefinite, uncertain and of no effect. It does not appear upon what sum or amount the thirty per cent. is to be reckoned and determined. The school district for which the tax was assessed was not shown to have any legal existence. It was not shown that the town, by vote or otherwise, had ever established such district, or that there was any such district defined by metes and bounds by the town, as is required. The school meeting at which the money was voted, to raise which, the assessment was made, was an annual meeting, and was called and held after March 15. The record shows the notice for the meeting in 1863, was posted *at* the door, not *on* it. The warrant for the meeting was not under seal. Notice for the meeting in 1864 posted *at*, not *on* the door. If the meeting, at which the money was raised, can be regarded as a special meeting, it being to raise money, the notice was deficient in length of time, as there was only eight days, the law requiring ten. Money cannot be voted and raised to buy mural maps, nor globes, nor apparatus. The plaintiff did not show that he had any deed of the property. The paper he relied on as a deed, was void; 1st, Because it was given before the law authorized it to be, and within a year from time of sale ; and, 2d, because it was uncertain and indefinite. The advertisement or notice of the sale was deficient, in this, that it gave no hour, and the return is deficient for the same reason. The collector had no right to sell the land. There was no lien on it. It appeared that the defendant had an abundance of personal property, and that no request of him was ever made by the collector to expose it, and that the defendant neither neglected or refused to expose personal property when requested. The clerk of the county convention which it is claimed voted the county tax, was not sworn. The proceedings of said convention, the last meeting of which was in July, were not reduced to writing or made up until more than sixty days

had elapsed after the dissolution of said convention, and until December 1, 1863 thereafter; and no return of the proceedings of said convention was furnished the clerk of the court within sixty days, either after the adjournment of the legislature or the dissolution of the convention. The personal property of the defendants against whom the assessment was made must first be taken, inasmuch as he had a sufficiency known to the collector, and which he neither neglected or refused to expose on request. The real estate was exempt and could not be proceeded against.

Upon the points considered by the court, Pike & Blodgett, for the defendants, contended:

I. The plaintiff's deed was prematurely delivered, and is, therefore, absolutely void. The statute provides that the deed shall be given at the end of one year from the time of sale. Comp. Stat., ch. 49, sec. 17. This means after the expiration of a year. Bell's Town Officer (4th ed.), 138. Gen. Stat., ch. 55, sec. 17. The owner is entitled to a full year in which to redeem, and this did not end until midnight on the fourth day of May, 1866. C. S. chap. 1, sec. 25; *Rand* v. *Rand*, 4 N. H. 267; *Blake* v. *Crowninshield*, 9 N. H. 304. The cases cited by the plaintiff, showing that for some purposes a day ends at sunset, have no bearing, because they relate only to commercial usuages. Day in our statutes, and generally, means civil day, and not natural, as claimed by plaintiff. "The common acceptation of the word day is a civil day, beginning and ending at midnight." *Shaw* v. *Dodge*, 5 N. H. 462. The defendants are entitled to a liberal construction of the statute. "A law which authorizes the redemption of lands sold for taxes, ought to receive a liberal and benign construction in favor of those whose estates would be otherwise divested, especially in those cases where the time allowed for the payment of the taxes is short, the indemnity given to the purchaser ample, and a penalty is imposed on the owner." *Dubois* v. *Hepburn*, 10 Peters 1. The presumption of law is, that the defendant, D. S. Baker, was ready to redeem on the day the deed was delivered, and was prevented from doing so by the wrongful delivery. If, therefore, there is any doubt as to the rule for computing time, or as to the construction of the term "at the end of a year," defendants should have the benefit of it, because "the neglect to redeem is in the nature of a forfeiture of the owner's right, and, therefore, the court will so construe the statute as to prevent this effect, if the language is susceptible of a doubt." *Sands* v. *Lyon*, 18 Conn. 30.

II. The deed is void for uncertainty. The general doctrine is, that when the description is so uncertain that the land cannot be identified, the deed will be void.

The description in plaintiff's deed, is as indefinite as in *Bean* v. *Thompson*, 19 N. H. 290, or in *Harvey* v. *Mitchell*, 31 N. H. 575. If the plaintiff has any rights under the deed, he has that of selection. He can locate his land in any form he pleases. He can establish his east and south boundaries, without special regard to length or

breadth, but with special reference to the quality and value of the land. The only limitation, east and south, is that his tract in those directions is to be bounded "by the remaining part of said Baker's farm," which may be a strip not more than a foot in width. Practically, the deed gives the plaintiff the right of *election*, which might in its exercise almost destroy the value of the defendant's farm, or greatly incommode him in its use and occupation. Such right of election the law will not tolerate. *Haven* v. *Cram*, 1 N. H. 93; *Harvey* v. *Mitchell*, *ante*. There is no rule of law which will locate this land. The law will not do that for plaintiff which it prohibits him from doing. The court cannot presume, that the lines will be straight, or that the road runs due north and south. The land may so lie, that it cannot be located in any particular form. The plaintiff's counsel admit, they do not know in what form it would be, and it is submitted, the court cannot say, with no knowledge of the situation of the Baker farm, or of the relative length of the lines north and south, east and west. The universal rule is, that in sales by officers under process of law, the land must be defined with certainty. In the language of the supreme court of New York, in *Jackson* v. *DeLancy*, 13 Johns. 551: "It is altogether inadmissible that the property of parties should be swept away in this loose, undefined manner. It would operate as a great oppression on the debtor, and lead to the most odious and fraudulent speculations. To tolerate such judicial sales, would be a mockery of justice." "The deed of the collector, taking effect only as the execution of a statute power, should be construed with strictness so as to enable the grantee to identify the land, and to enable the owner to redeem it." *Hill* v. *Mowry*, 6 Gray, 552.

III.  If the deed is not void, the motion to amend it cannot prevail; because,

(1.)  The collector is not an officer of the court, and his proceedings do not go upon or become part of its records.

(2.)  The amendment is asked in court of law, which has no jurisdiction.

(3.)  It cannot be granted, in any court, upon a simple verbal motion.

IV.  But the plaintiff says, there is no necessity for a deed, the title passing by the sale. This position is wholly untenable. The sole authority to sell lands for taxes, results from statute provisions, with all of which, there must be strict compliance. The provision that there shall be a deed, is positive and imperative. The sale is not absolute, but conditional. If the owner does not redeem within the year, the purchaser may have a deed, and it is this which perfects his title. Until this happens, he has simply an indefinite, contingent and inchoate right, which comes to nothing, without a deed. The collector has no power to deliver possession, and the purchaser is not entitled to and cannot obtain it, until he receives a deed. In all sales of real estate, there must be a deed to pass the title; here was a sale; consequently, there must be a deed. See Comp. Stat., ch. 136.

*Leverett & Blair, and Carpenter*, for plaintiff.

Upon the same points contended : That the deed was delivered by collector at the time required by law ; "The collector is to give the deed *at the end of one year.*" Comp. Stat., ch. 49 § 17. The year clearly ended at the *end* of the *fourth*, and before the commencement of the fifth, day of May. It is submitted, that the last moment of the fourth day of May was the *end of the year*, the only point of time literally and exactly answering to the language of the statute. Any later time would not be "*at*," but *after*, the end of the year. The year *ended at the close* of business hours on May 4. The defendant could not redeem after that time, or after sunset on that day. *Aldrich* v. *Albee*, 1 Green. 120 ; *Shed* v. *Brett*, 1 Pick. 401 ; Bacon's Abr. Tender D. Wade's Case, 5 Coke 114, *Twickley* v. *Prentice*, 4 Taunton 549 ; Con. Dig. Rent, D. 1.

It will not be presumed, that the deed was made, and delivere d before dark on May 4th, but, rather after that time *ut res valeat.*

But, we submit the time of the execution of the deed is wholly immaterial. The statute does not in terms, nor by implication *forbid* the giving of a deed before the end of the year, and it will not be contended, that a deed given a month after the. end of the year is invalid for that reason. The giving of the deed could not affect the land owner's right to redeem. But, if that be not so, still the question here arises against the owner of the land, who if he made any effort, or intended to redeem, can readily show it. As against him, therefore, however, it might be, as against a stranger, the deed will be held not to be unseasonably given, unless he shows some intent or effort to redeem, or that he was prevented by the premature delivery of the deed.

(2.) The deed is not void for uncertainty. It calls for a square or rhombus, in the northwesterly corner of the homestead farm, containing seven and three-fourths acres of land. *Walsh* v. *Ringer*, 2 Hammond, Ohio, 327, is directly in point and decisive ; *Lyford* v. *Thurston*, 16 N. H. 409 ; *Jackson* v. *Vickery*, 1 Wendell 406.

(3.) No amendment of the deed is necessary, for the reason, that the plaintiff's title, as against the defendant, is now perfect without any deed. It need not have been put in evidence at all. The sole object of a deed is to be placed on the record, as a *notice* to subsequent purchasers. The title passes by the *sale*, subject to the rights to redeem within a year, and not by the deed.

NESMITH, J. We propose to examine but two or three of the questions involved in this case.

Our examination of the case, proceeds under the guidance of the well-established rule of law, that the party, who seeks the benefits of statute law, must adhere closely to its requirements, or must show a substantial compliance with its provisions. Therefore, the burden of proof, is upon him, who claims under a collector's deed to show his proceedings legal or regular. *Harvey* v. *Mitchell*, 31 N.

H. 578.    *Cass* v. *Bellows*, 31 N. H. 506.    *Waldron* v. *Tuttle*, 3 N. H. 340.    The defendant says the collector's deed, upon which the plaintiff must rely for his title, was given prematurely, and, for this reason, must fail.    The land in dispute, was sold on the 4th day of May, A. D. 1865, and the collector delivered his deed to the purchaser, being the plaintiff in this suit, on the 4th day of May, A. D. 1866.    Ch. 49 of the Comp. Laws, sec. 17, provides, that the collector, if living, otherwise his administrator, shall, *at the end of one year* from the sale, execute, to the purchaser or his heirs, a deed of the land so sold, and not redeemed.    The defendant contends that the deed in this case was executed before the year for redemption of the land sold had ended or expired, and that he was entitled to the whole entire civil day of May 4, 1866, in which he might have legally redeemed the land sold, and thereby prevented the delivery of any deed to the plaintiff; and that the deed could not, with any legal propriety, have been delivered prior to the 5th day of May, A. D., 1866.    Under the common and well received construction of our law, bearing on the subject, we think the defendant is correct.    Sec. 25 of chap. 1, of the Compiled Laws, prescribes, that when time is to be reckoned from any day, date, act done, or the time of any act done, either by force of law or by virtue of any contract, hereafter made, such day, date, or the day when such act is done, shall not be included in such computation.    The day of sale of the land for taxes being excluded by the aforesaid statute rule, of course it follows by fair legal intendment, that the owner must have one full and entire year for the payment of his taxes, and the redemption of his land from and after the fourth day of May, A. D., 1865.    The word *after* has been recently introduced into our General Statutes, instead of *at*.    But the intent or meaning of the statute remains unchanged. It appears to us the construction we give to the law on this subject, upon a just interpretation of the several statutes, admits of no other or different construction.

Mr. Fox, in his Town Officer, printed in 1847, gave the following rule to collectors of taxes and others interested in the subject.    Rule 16, p. 109 : " The owner may redeem any tract, or any interest therein, within *one year* next after the day of sale; that is, on or before the same day of the same month in the next year; and the collector, within ten days after the day of redemption expires, shall leave a list of all the lands so redeemed with the town clerk, who shall record the same."    Then follows rule 17th : " After the expiration of one year from the day of sale, the collector shall execute to the purchaser, or his heirs, a deed of so much of the land sold as is not redeemed according to law."    The same rules of construction are adopted by Chief Justice Bell in his edition of the Town Officer, and are sustained by many judicial decisions in this state and others upon similar questions, involving the computation of time.    *Leavitt* v. *Simes*, 3 N. H. 14 ; *Rand* v. *Rand*, 4 N. H. 267 ; *Blake* v. *Crown-inshield*, 9 N. H. 304.    So in Massachusetts : *Bigelow* v. *Wilson*, 1 Pick. 485 ; *Wiggin* v. *Peters & al.*, 1 Met. 127.

The latter case was debt on bond for the prison limits, under the condition that Peters, who was committed to jail, &c., should, at the expiration of ninety days from the day of his commitment, surrender himself at the jail-house, &c.   *Shaw, C. J.*, upon the facts stated in that case, says : The words of the bond are, *at the expiration of ninety days* from the day of his commitment.   The words of the statute are the same in effect, though in different language.   Ninety days is a term of time, excluding the day of commitment, and the bond is not forfeited, if he obtain his discharge at any time within that term.   The case of his not obtaining his discharge cannot happen until the whole of that time has expired ; and, therefore, there can be no breach of this condition until the whole of that time has expired.   In the case before us, excluding the day of commitment, the term of ninety days expired on the last moment of the last day of June ; and, therefore, the surrender having been made on the first day of July, it was within the time limited by the law, and the terms of the bond, and thus saved the forfeiture.   Judge Shaw remarks that the general rule governing the aforesaid case, was settled in *Bigelow* v. *Wilson*, before quoted.   The marginal note of the latter case, is in the following language :  " In computing the time allowed by the statute of 1815, being ch. 137, sec. 1, for redeeming an equity of redemption, sold on execution, *which is within one year, next after the time of executing by the officer to the purchaser the deed thereof. The day, on which the deed is executed, is to be excluded in the computation.*"

No moment of time can be said to be after a given day, until that day has expired.   For a day is to be considered as an *indivisible* point of time ; and there can be no distinction between a computation from an act done, and a computation from the day, in which the act was done.   *Bagley* v. *Bayley*, 5 Gray, 510 ; *Fuller* v. *Russell*, 6 Gray 128.   So the six months after an assignment, which was dated May 16, expired on the following 16th of November of the same year.   2 Cush. 334.

Under an agreement to convey lands, on the payment of a promissory note, in annual payments, the day of the date is to be excluded. If dated on the 3d of March, A. D., 1847, a payment, or tender of the first installment on March 3, A. D., 1848, is sufficient.   4 Cush. 460.   So in New York it is settled, that when after the expiration of a given number of days from one act, another may be done ; the day of the first act must be excluded, and the second act cannot be done till the day after the expiration of the given number of days.   *Com. Bank* v. *Ives*, 2 Hill, 355 ; *Butts* v. *Edwards*, 12 Denio. 164 ; *Cornell* v. *Moulton*, 3 Denio 16 : *vide*, also, Green. Cruise Title 32, ch. 5, sec. 17, & note ; *Strong* v. *Birchard*, 5 Conn. 361 ; *Young* v. *Higgon*, 6 Meeson & Welsby 53 ; *Streets* v. *Selden*, 2 Wal. 190.

We may remark, generally, when statute law defines the times for the redemption of estates mortgaged, as when the equity of redemption has been sold and conveyed, or when lands have been sold for taxes, and the original owners of such estates are in danger of loss,

through forfeiture for failure to redeem seasonably or otherwise, courts are inclined to construe the law liberally in favor of the original owner, and in opposition to the loss of the estate. In *Dubois* v. *Hepburn*, 10 Peters, U. S. Court 4, *Baldwin, J.*, says : A law, authorizing the redemption of an estate sold for taxes, ought to receive a liberal and benign construction in favor of those whose estates will be otherwise divested, especially where the time of redemption is short, and the purchaser can obtain indemnity. It would, therefore, seem not to be necessary for the purposes of justice, or to effectuate the objects of the law, that the right to redeem should be narrowed down by a strict construction of the statute on this subject. And when there is any doubt as to the right or power of redemption, the original owner is to have the benefit thereof. 18 Conn, 30.

When personal property is distrained and sold for taxes, the law holds that the collector shall keep the property the whole four days after the seizure, and before the final sale, for the reason that the owner should have all the time allowed by the statute in such cases for the redemption of his property, and to save the sacrifice consequent to a sale ; and such sales have been pronounced illegal where the full time has not been given by the collector prior to his sale. *Mason* v. *Thomas*, 36 N. H. 302 ; *Souhegan Factory* v. *Mc-Conihe*, 7 N. H. 309 ; *Lefavor* v. *Bartlett*, 42 N. H. 555. Our legal day is the civil day. *Shaw* v. *Dodge*, 5 N. H. 462.

With these views, and under the force of the authorities before referred to, we come to the conclusion that the original owner did not have his legal time for the redemption of his land before the collector executed his deed to the plaintiff. And that, consequently, the deed was executed prematurely, and plaintiff's title for this reason must fail. *At* the end of the year, means *after* the expiration of the year, and not at any hour, minute, or instant before the end of the year.

The plaintiff's counsel contends that the naked sale of the land for non-payment of taxes, could vest in the purchaser a full right of entry as against the original owner. But we understand the rule to be otherwise settled. That the title cannot be regarded as perfected, except by deed fortified by the previous regular proceedings—so settled in the analagous case of an administrator's sale. *Livingston* v. *Pendergast*, 34 N. H. 544.

Supposing our views to be correct so far, we might reasonably close the further discussion of the exceptions made by the defendants to the plaintiff's recovery in this case ; but we, however, propose to discuss briefly the plaintiff's motion to *amend* the record of the collector's return of the land sold, as well as the description of the land in plaintiff's deed. Plaintiff says these records are both defective, and asked for an amendment of both the sale and deed, at the trial before the jury, in order, as he says, that they should be made to correspond to the true intent of the parties, when the land was sold, and subsequently conveyed. Our courts have generally been inclined to listen favorably to motions for amendments, when found

necessary, and when they can be made consistently with the established rules of practice, and with the true original purposes or intents of the interested parties. In this case, two objections present themselves to the plaintiff's proposition. If, as the plaintiff suggests, an important or material mistake exists in the description of his deed, such mistake cannot be reformed by the court, while sitting as a court of law. Application for relief of this nature must be made to the court under its chancery jurisdiction; where the evidence, bearing on this question, must be collected and presented to the court, under a suitable petition, stating the facts of the case, and where such evidence may be weighed and considered, and a decree be made according to its influence upon the minds and conscience of the court. If, through accident, a mistake actually existed here, such as might materially prejudice the plaintiff in obtaining his expected rights, then we might order this case to be continued so long as might be necessary, to give him an opportunity to have such mistake corrected in the usual and proper manner. *Prescott* v. *Hawkins*, 12 N. H. 19.

We are, however, inclined to the opinion, that the deed before us may stand without amendment. This court is bound to carry out the intent of the parties, if it possibly can, by giving a fair and reasonable construction to the language and meaning of the parties, so that *res valeat et non pereat.* Now, looking at the description of the deed from the collector to the plaintiff, we find that the quantity of land conveyed is definite, viz., seven and three-fourths acres. Next, that it is part of Samuel S. Baker's homestead farm; next, bounded west by the *highway*, leading from Holderness Village to Andrew Baker's farm; northerly, by land now owned by John B. Carr; easterly and southerly, by the remaining part of said Baker's farm. To give all parts of the boundaries of said tract of land due effect, it becomes a certainty that the location of this land must be at the northwest corner of the said Samuel S. Baker's homestead farm. Because here, and nowhere else, must be the point of intersection of the aforesaid highway with John B. Carr's farm. Then the tract of land has for its western boundary the aforesaid highway, and the Carr farm for its northern boundary. Starting from the northwestern corner, or point of intersection, and running equi-distant lines on said highway and the Carr farm, so far as to embrace the given quantity of land, and the description of it is reasonably perfected. *Id certum est quod reddi certum potest.* The figure of the land hereby conveyed must be determined by the course of its outside boundaries. The angle formed by the external lines may be a right angle, more or less. It is perfectly immaterial what the precise shape of the land conveyed may assume. The description called for is made complete, when, from the ends of the first two lines heretofore described, the easterly and northerly lines, bordering on the said S. S. Baker's farm, are united, thus embracing the land intended to be conveyed in one compact body. In this way, we are enabled to identify the land sold, as being the same land conveyed, and there is no occasion to amend either record.

In *Hill* v. *Mowry*, 6 Gray 552, Judge Shaw says : The deed of the collector, taking effect only as the execution of a statute power, should be construed with strictness, so as to enable the grantee to identify the land, and the owner to *redeem* it; and if the description in a conveyance be so uncertain, that it cannot be known what estate was intended, the conveyance is void. *Worthington* v. *Hyler*, 4 Mass. 205 ; *Tenney* v. *Beard*, 5 N. H. 58 ; *Haven* v. *Cram*, 1 N. H. 93 ; *Bean* v. *Thompson*, 19 N. H. 290 ; *Harvey* v. *Mitchell*, 31 N. H. 575 ; *Wash* v. *Renger*, 2 Hammond, Ohio 327.

We, therefore, reject, the proposed amendments, and stand upon the validity of the original sale ; and the deed, so far as the description of it is concerned, we pronounce sufficient.

The *first* exception of the defendant, being found valid and fatal to the plaintiff's right to recover under his title, the verdict must be, therefore, set aside and

*A new trial granted.*