## Duff Construction Company v. Alford.

(Decided October 2, 1912.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Personal Injury—Action For—Refusal of Peremptory Instruction. —In an action for damages for personal injuries sustained by falling into a ditch, it was not error to refuse the peremptory instruction asked for by the defendant, for upon the question as to whether it had dug the ditch there was sufficient evidence to take the case to the jury.

2. Pleading—Filing Amended Petition.—Where the petition had not correctly designated the point where the injury occurred, it was not error to permit the filing of the amended petition designating the point at the conclusion of all the testimony.

3. Admissions—When Declaration of Agent Binds Principal.—A party's own admissions, whenever made, may be given in evidence against him; but the admission, or declaration of his agent binds him only when it is made during the continuance of the agency.

VANWINKLE, SPALDING & GILMORE for appellant.

J. W. GARRISON for appellee.

OPINION OF THE COURT BY JUDGE WINN—Reversing.

Thirty-fourth street, running north and south, and Grayson street (sometimes called Cedar street), running east and west, intersect each other at right angles in Louisville, Kentucky. In September, 1910, the appellant, the James Duff Construction Company, was engaged in building a city sewer along Cedar street in the vicinity of this intersection. At this time Thirty-fourth street was unimproved, and the only sidewalk running north and south along its east side was a cinder path. Cutting this cinder path was a ditch or drain. Over the ditch or drain were laid some boards connecting the abutting ends of this cinder path. The appellee, James L. Alford, while walking north on this cinder path, between seven and eight o'clock of the evening of September 17, stepped or fell from these boards into the ditch and sustained injuries, for which he brought his action against the construction company. Plaintiff alleged that through the negligence of the company in maintaining an open and unprotected ditch he was caused to sustain his injuries. He alleged that he had been compelled to employ a physician; to purchase medicine; that he had lost time from his labor; that he was injured in his head, arms, legs, back and shoulder; that he suffered a severe nervous shock, and that his power to earn money had been permanently impaired. He prayed judgment for $2,000. The construction company traversed the petition and plead contributory negligence on the part of Alford. Issue was joined upon the allegation of contributory negligence and the case proceeded to a trial. At the conclusion of all the testimony plaintiff, Alford, asked leave to, and was permitted to file an amended petition. In the amended petition he alleged that the injury occurred at the southwest corner of the intersection of the two streets above named. The allegations of the amended petition were traversed of record. The jury awarded plaintiff a verdict of $1,000, and from the judgment upon that verdict the construction company appeals.

No complaint is made of the instructions given by the trial court. Appellant complains, first, that the court should have instructed the jury to find for it; second, that the court erred in permittting the filing of the amended petition; third, that incompetent testi-

mony was admitted against it; fourth, that the verdict of the jury was so excessive as to indicate that it was the result of passion and prejudice. The points of complaint necessitate a consideration of the evidence.

First—Should the peremptory instruction have been given? The evidence as to whether the construction company dug the ditch or drain is sharply conflicting. Alford testified that the ditch looked like a new ditch, and that there were shovel prints in it; that there was a pipe laid along in the ditch, and that it was used for furnishing water to, or taking waste water away from, a sewer machine of the construction company located adjacent to the place of the injury. Hugo Meyer testified that he was present at the intersection of these streets and that he saw Mr. Green, in charge of the work there, call six or eight men out of the sewer and put them to work digging a ditch across the cinder path. He says that there were no boards there at the time they started to dig the ditch, and that there was no ditch there at the time. Charles Glenn testified about the ditch running across Thirty-fourth street; that a pipe was laid in the ditch, and that the pipe connected with a corner water box; that he never saw any ditch until the sewer work commenced, though he lived there before the sewer work started; that from his inspection of the ditch across the ends of the sidewalk it was a new ditch about a foot and a half or two feet deep; that there were two planks across the ditch, running on the length of Thirty-fourth street, and one board across that. William G. Bache testified that a line of pipe crossed the cinder path; that there were boards across the ditch, which didn't quite cover the cinder path, and that the pipe came out from under either end of these boards; that the pipe was connected with the machine; that the ditch was newly made for the purpose of this water pipe and showed the marks of the shovel or spade. George Kohler testified that there was no ditch there until the sewer work started. Upon the other hand, Norman Arthur testified for the company that the ditch was already there when the construction company came to work. He testified to the existence of the pipe line across the street. Frank McDonald, for the defense, testified that the ditch was there with plank over it at the time the sewer company began its work—that it looked as though it had been there for years; that the

company did not do any digging in this ditch, but that they took out trash and leaves so that the water could run. Henry Neimyer had lived for years on the southeast corner of the street intersection. He testified that there had always been a little drain there, and that there had been a board covering across the ditch in the cinder path. He added, however, that the construction company made the ditch a little deeper and cleaned it out a little and put extra plank on it; that they dug it out about a foot. Alvin Ritter testified that the boards had been there as long as the walk had been there, and that the drain or ditch had been there before the construction company came. Henry Magel, a cripple, testified directly to the prior existence of a drain from four to six inches in depth, with boards across it, before the construction company came there. He fortifies his evidence by stating that he was a cripple and that using a tricycle as a boy, he had to be lifted off while some one would set his tricycle across the boards for him. The foregoing is the substance of the testimony as to whether the construction company had dug the ditch. Certainly, there appears to be enough of testimony to take the case to the jury upon this question; for, even if we concede that there had been a depression or drain there, there is the admitted evidence by the construction company's men that they cleaned it out and changed the condition of the boards, and the evidence of Neimyer, the long-time dweller on the corner, that the construction company dug out the ditch about a foot. It was not error, therefore, to refuse the peremptory instruction.

Second—The original petition charged that the ditch was on Thirty-fourth street between Grayson and Walnut streets, while the proof showed that the ditch was at the southeast corner of the intersection of Grayson and Thirty-fourth streets. At the conclusion of all the testimony, the plaintiff filed his amendment, alleging not, as in the original petition, that the ditch was on Thirty-fourth between Grayson and Walnut streets, but that it was at the southwest corner of the intersection. As a matter of fact, the ditch was at the southeast corner. To the conditions existing at the southeast corner, all the testimony, both of the plaintiff and defendant, had addressed itself, and the defendant could not be misled by this error of the plaintiff in designating the point as the southwest instead of the southeast

corner of the intersection. Appellant makes a good deal of this point because one of its witnesses had testified as to some digging over on the southwest corner, arguing that the jury might have thought that the ditch over there was the one into which Alford fell. From the testimony detailed, however, it is obvious that the jury could not have been so misled, which is further manifested by the fact that there was no cinder path on the west side of Thirty-fourth street. It was not error to permit the filing of the amended petition.

Third—The testimony which the appellant complains was erroneously admitted against it was that of William G. Bache. Mr. Bache went down two or three days after the accident, in company with Alford's attorney, for the purpose of looking the ground over preparatory to making a witness of himself. Upon direct examination, he testified as follows:

"Q.—Did you have a talk with the one in charge of the James Duff Construction works at that time down there?

"A.—Yes, I asked him; I made a remark, 'Who cut this ditch?' or some thing like that.

"Q.—Well what did he say?

"A.—He answered, 'We did,' or something in that way; 'We did' or 'I did;' that is all I had to say to him then."

When Mr. Van Winkle took the witness upon cross examination, the following appears in the record:

"Q.—Who did you say you talked to?

"A.—Some man in charge; I asked him who dug the ditch, and he answered in a rough way, said—

"Q.—Who was that man?

"A.—He was the man in charge.

"Q.—Who was he?

"A.—I don't know.

"Q.—How do you know he was?

"A.—He appeared to be bossing everything there.

"Mr. Van Winkle: The witness says that he does not know; I move that it be excluded from the jury.

"Mr. Garrison: Call in Mr. McDonald.

"The Court: I think the jury may consider the statement as made. The witness has testified that the man was giving orders around there as if in charge. It is for the jury to consider what weight to give the testimony.

"To which ruling of the court the defendant by counsel excepts."

The motion to exclude the testimony at the time and the court's ruling upon the motion seem to have been based solely upon the question as to whether the connection of this man with the defendant company was sufficiently established. Upon appeal here, however, complaint is made that this testimony was inadmissible, because of its being the admission of an agent made after the work out of which the injury arose had been concluded. In support of this proposition, appellant relies upon Southern Express Co. v. Fox and Logan, 131 Ky., 258, and many other authorities. A very excellent statement of the rule is to be found in I. C. Ry. Co. v. Winslow, 119 Ky., 877, where the justice writing quoted thus from Greenleaf on Evidence, volume 1, section 113: "The party's own admissions, whenever made, may be given in evidence against him; but the admission or declaration of his agent binds him only when it is made during the continuance of the agency, in regard to a transaction then depending, et dum fervet opus. It is because it is a verbal act and part of the res gestae that it is admissable at all, and therefore it is not necessary to call the agent himself to prove it, but, whenever what he did is admissable in evidence, there it is competent to prove what he said about the act while he was doing it; and it follows that, where his right to act in the particular matter in question has ceased, the principal can no longer be affected by his declarations, they being mere hearsay." It was not proper, therefore, to admit this declaration of an agent made after the ditch work had been concluded. Its prejudicial character will be clear from the consideration that the agent's improperly admitted declaration was that the company had dug the ditch—the very point in issue. Its effect upon the jury must have been large, and may have been controlling. The case must be reversed for this error. The ultimate motion made to exclude the testimony, with the exception then saved, was sufficient to protect appellant's rights.

The conclusion reached renders it unnecessary to discuss point 4, supra.

Much of the testimony in this record is confusing. Upon the trial a blackboard was used to delineate the conditions of the streets and the location of the various

machinery, ditching and the like about which there was testimony. Counsel would point to this board and ask questions with reference to it, and witnesses would predicate their answers upon certain points indicated on the board. It is much the better practice in cases of this nature to have a diagram drawn to scale with the various points and objects upon it marked with figures or letters to which questions and answers may address themselves. Such map then or a tracing paper copy of it can by proper procedure be brought up here as a part of the record, making it possible for the court to understand much more easily and much more accurately the testimony upon the trial.

For the reasons given the judgment of the trial court is reversed.